IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JOHN D. STEPHENS,                    )
                                     )
        Petitioner,                  )
                                     )
    v.                               )        CV 115-151
                                     )
VANCE LAUGHLIN, Warden, and          )
HOMER BRYSON, Commissioner,          )
                                     )
        Respondents.                 )
_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at Wheeler Correctional Facility in Alamo, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondents.

## I.     BACKGROUND

On September 20, 2012, the Burke County grand jury indicted Petitioner for rape pursuant to O.C.G.A. § 16-6-1. (Doc. no. 9-5, pp. 26-27.) Conviction for rape may result in punishment "by death, by imprisonment for life without parole, by imprisonment for life, or by a spilt sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life." O.C.G.A. § 16-6-1(b). On December 11, 2012, pursuant to <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), Petitioner

entered a plea to the lesser included offense of aggravated assault with intent to rape, for which the range of punishment is "imprisonment for not less one nor more than 20 years." O.C.G.A. § 16-5-21(c); doc. no. 9-5, pp. 31-38, 59-71.

Attorney Joshua Smith negotiated the plea agreement on behalf of Petitioner, and represented Petitioner at the plea and sentencing hearing. (Doc. no. 9-5, pp. 12, 31, 59.) The Honorable Sheryl B. Jolly sentenced petitioner to a "split" sentence of ten years in prison and ten years of probation. (Id. at 38.) On May 17, 2013, the Clerk of Court filed Petitioner's *pro se* Motion to Modify Sentence, in which he argued the sentence for his aggravated assault conviction was too severe and requested his twenty-year sentence be modified to require he serve only three years in prison. (Id. at 48-50.) Judge Jolly denied the motion in an order filed June 26, 2013. (Id. at 54.)

Petitioner filed a state habeas corpus petition *pro se* on September 20, 2013, in Wheeler County, and subsequently amended that state petition on December 31, 2013. (Doc. nos. 9-1, 9-2.) Petitioner raised the following claims in his state habeas petition:

(1) Petitioner's plea was not knowing and voluntary because:
   (a) his rights under Boykin v. Alabama, 395 U.S. 238 (1969), were not explained to him; and
   (b) neither an explanation of the charges nor a factual basis for the plea was put on the record.

(2) Petitioner received ineffective assistance of counsel because Mr. Smith coerced him into the Alford plea by:
   (a) not explaining the case to Petitioner;
   (b) falsely telling Petitioner he would receive life in prison if he went to trial;
   (c) failing to investigate the case; and
   (d) letting Petitioner "plead to a void guilty plea";

(3)   Petitioner received ineffective assistance of counsel because Mr. Smith did not file a general or special demurrer to the indictment.

(4)   Petitioner's due process rights were violated because he was tried on a defective indictment.

(Doc. nos. 9-1, 9-2.)  The state habeas court conducted an evidentiary hearing on January 16, 2014, and Mr. Smith testified at the hearing.  (Doc. no. 9-5, pp. 9-23.)  The state habeas court denied relief in a final order dated March 27, 2015, and filed April 7, 2015.  (Doc. no. 9-3.) The Georgia Supreme Court denied Petitioner's request for a certificate of probable cause to appeal (CPC) on July 6, 2015.  (Doc. no. 9-4.)

Petitioner then timely filed the above-captioned § 2254 petition *pro se*.  (Doc. no. 1.) Petitioner raises the following grounds for relief:[1]

(1)   Mr. Smith provided constitutionally ineffective assistance of counsel because he:
(a) did not explain the case to Petitioner;
(b) coerced Petitioner into pleading guilty by telling him he would be sentenced to life in prison if he went to trial;
(c) failed to investigate Petitioner's case;
(d) let petitioner plead guilty to a "void guilty plea"; and
(e) failed to file a general demurrer against the indictment because it was not signed by the grand jury foreperson.

(2)   Petitioner's plea was not knowing and voluntary because Mr. Smith did not accurately explain the differences between the rape charge and the lesser included offense of aggravated assault with intent to rape to which Petitioner entered his plea, causing Petitioner to think he was pleading to a misdemeanor rather than a felony offense.

(3)   Petitioner's due process rights were violated because he was tried on a defective indictment that was not signed by the grand jury foreperson.

---

[1]Petitioner's brief in support of his federal petition does not correlate chronologically with the grounds stated in the form petition.  (Compare doc. no. 1 with doc. no. 4.)  The Court will reference the brief for supporting information in accordance with the ground numbers in the form petition, regardless of the labeling in the brief.

(4) Mr. Smith provided ineffective assistance of counsel because he:
  (a) did not file a general demurrer against the indictment because it was not signed by the grand jury foreperson;
  (b) coerced Petitioner into pleading guilty by erroneously telling him he was pleading guilty to a misdemeanor sexual battery charge rather than a felony aggravated assault charge; and
  (c) should have "had Petitioner's mental health problems checked."

(See generally doc. nos. 1, 4.)

## II.     STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

<u>Id.</u> (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." <u>White v. Woodall</u>, 572 U.S. -, 134 S. Ct. 1697, 1702 (2014). Rather, the habeas petition must show the state court decision was "objectively unreasonable." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003); <u>see also</u> <u>Woods v. Donald</u>, 575 U.S. -, 135 S. Ct. 1372, 1376 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. <u>Reed v. Sec'y, Fla. Dep't of Corr.</u>, 767 F.3d 1252, 1260-61 (11th Cir. 2014); <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's

adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III.   DISCUSSION

### A.   Petitioner Is Not Entitled to an Evidentiary Hearing.

Petitioner requests the Court hold an evidentiary hearing on his federal petition. (Doc. no. 4, p. 8; doc. no. 10, p. 3.) The request should be **DENIED**.

According to Rule 8 of the Rules Governing Section 2254 Cases, "[i]f the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Under the applicable provision of AEDPA, if the petitioner has failed

to develop the basis for a claim in state court, an evidentiary hearing on a given claim is prohibited unless the petitioner shows that:

> (A) the claim relies on –
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). A petitioner has "failed to develop the basis for a claim" – and consequently must satisfy the requirements of 28 U.S.C. § 2254(e)(2) to qualify for a hearing – if "petitioner or his counsel were [not] diligent in developing the record in the state habeas proceedings." Ward v. Hall, 592 F.3d 1144, 1159 (11th Cir. 2010) (citing Williams v. Taylor, 529 U.S. 420, 437 (2000)).

Of note, "where a petitioner was granted an evidentiary hearing or other means of presenting evidence to the state court on the particular claim, and the petitioner failed to take full advantage of that hearing, despite being on notice of and having access to the potential evidence and having sufficient time to prepare for the hearing, that petitioner did not exercise diligence in developing the factual foundation of his claim in state court." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1289 (11th Cir. 2012). In other words, Petitioner must show that he made a reasonable attempt, in light of the information available at the time, to investigate and pursue his claims in state court. Williams, 529 U.S. at 436. Moreover, "if a

habeas petition does not allege enough specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011).

As discussed in detail below, the basis for all of Petitioner's claims in this federal petition were known to him prior to the hearing on his state habeas petition. (See doc. nos. 9-1, 9-2, 9-3, 9-5.) The state habeas hearing was held over one year after Petitioner entered his guilty plea and four months after he filed his petition. (Doc. no. 9-5, pp. 1, 3.) Although Petitioner now argues the state hearing was not "full and fair" because he did not "have his file to fight the case at the evidentiary hearing," (doc. no. 4, p. 8), when asked at the beginning of the state proceedings if he was prepared to go forward, Petitioner answered affirmatively. (Doc. no. 9-5, p. 3.) Thus, Petitioner had ample time to prepare and a full opportunity to develop any facts necessary to support his claims. Petitioner has not established he was denied the opportunity by the state court to develop his claims, and indeed, his federal claims are all based on events in which Petitioner himself participated and therefore had full knowledge of well prior to the state habeas hearing.

Moreover, Petitioner has not identified any evidence he seeks to introduce at a federal hearing that could change the outcome of his case. Petitioner claims he did not get a copy of his indictment until after the state habeas hearing. (Doc. no. 4, p. 8.) However, the indictment was admitted as an Exhibit at the state habeas hearing and read into the record. (Doc. no. 9-5, pp. 18-19, 27.) Petitioner could have made any argument he wanted about document at that time. To the extent Petitioner contends his attorney should have requested a mental evaluation, as discussed below, he provides to information about what mental

problems required an evaluation, let alone describe how any such mental problems would have impacted his ability to enter a knowing and voluntary <u>Alford</u> plea.

In sum, Petitioner wants an opportunity to re-argue the merits of his claims or simply offer oral argument on why he failed to raise certain claims in his state proceedings. Neither is a proper basis for a federal hearing, and his request for a one should be denied.

**B.      Petitioner's Procedural Default**

**1.      A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies.**

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims that the petitioner did not raise in state court, but could have raised by any available procedure. 28 U.S.C. § 2254(b)(1)(A) & (c). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." <u>Henderson v. Campbell</u>, 353 F.3d 880, 891 (11th Cir. 2003) (quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)). The exhaustion requirement applies with equal force to all constitutional claims. <u>See</u> <u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1351-54 (11th Cir. 2012); <u>Footman v. Singletary</u>, 978 F.2d 1207, 1211 (11th Cir. 1992). "Ultimately, 'to

exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted). Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court. First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds. "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment." Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim. Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine. In other words, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed."

10

Id. at 1336 (internal quotations and citations omitted).  Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." Walker v. Martin, 562 U.S. 307, 311 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court.  In such instances, unless the petitioner either establishes the cause and prejudice or the fundamental miscarriage of justice exception, the failure to bring the claim properly in state court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1138-39 (11th Cir. 2001).  Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1342 (11th Cir. 2009) (citing Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)); Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999).  To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile." See Bailey, 172 F.3d at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006).  To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of

any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal.  See Devier v. Zant, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted claim, one must meet the 'cause and prejudice' test."); Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows:  a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus.").  In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition.  O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

2.    **Petitioner's Claim of Ineffective Assistance of Counsel in Ground Four (c) Is Procedurally Defaulted.**

In Ground Four (c), Petitioner argues counsel provided constitutionally ineffective assistance by failing to request a mental health evaluation for Petitioner.  Respondent argues this claim was not exhausted in the state courts but should be deemed procedurally defaulted because it is not based on new facts or new law and therefore would be barred as successive under O.C.G.A. § 9-14-51 if Petitioner were to attempt to raise it in a second state habeas petition.  (Doc. no. 8-1, p. 7.)  Petitioner argues this claim is based on newly discovered

12

evidence, but he does not describe any such evidence. (Doc. no. 10, p. 3.)

Indeed, at the plea and sentencing hearing, Judge Jolly specifically inquired about any history of mental illness or psychological disorder, and Petitioner identified only a learning disability based on a lack of ability to read and write. (Doc. no. 9-5, p. 70.) Judge Jolly further confirmed counsel read to Petitioner the court documents he signed and there was no mental or psychological history that prevented Petitioner from understanding what was occurring during the plea proceedings. (Id. at 62, 70.) Again at the state habeas hearing, counsel was questioned about Petitioner's mental competency and testified he had no reason to question it. (Id. at 13.) Petitioner offers nothing to suggest he made counsel aware of any mental problems that needed evaluation prior to proceeding with the plea.

Because this claim was not raised in the original state habeas proceedings and Petitioner would be procedurally barred if he attempted to raise it now in state court, it is procedurally defaulted and provides no basis for federal habeas relief. See O.C.G.A. § 9-14-51; McNair, 416 F.3d at 1305; Smith, 256 F.3d at 1139; Chambers, 150 F.3d at 1327.

### 3. Petitioner Has Not Alleged Cause to Justify Federal Review of His Defaulted Claim in Ground Four (c), and the Miscarriage of Justice Exception Does Not Apply.

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S._, 132 S. Ct. 912, 922 (2012) (internal quotation marks omitted).

"Once cause is proved, a petitioner also must prove prejudice.  He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.*'"  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  For example, procedural default does not preclude federal habeas review when

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S._, 133 S. Ct. 1911, 1918 (2013); Martinez v. Ryan, 566 U.S._, 132 S. Ct. 1309, 1318-19, 1320-21 (2012).

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice."  Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime.  Murray, 477 U.S. at 496.  In McQuiggin v. Perkins, the Supreme Court held that this exception survived AEDPA's passage but "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]."  569 U.S. -, 133 S. Ct. 1924, 1933 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).  Petitioner does not submit any evidence that he is probably

14

innocent of the crime to which he entered his <u>Alford</u> plea.  To the contrary, at the plea and sentencing, Petitioner did not contest the presentation of facts forming the basis for his plea, which included information from the prosecutor that Petitioner admitted his actions when confronted and an acknowledgment of a rape kit that tested positive and matched Petitioner's DNA.  (Doc. no. 9-5, p. 66.)  Instead, Petitioner asked the court for mercy.  (<u>Id.</u> at 67.)

Petitioner has presented no valid justification for failing to raise this claim in his state habeas proceedings, let alone something external to him that cannot be fairly attributed to him.  Indeed, as discussed above, Petitioner had numerous chances raise the issue of the manner in which counsel considered Petitioner's mental competence.  In addition, Petitioner can show neither prejudice resulting from the default nor that the claim is substantial, as he has offered no specific information about any potential mental problem counsel failed to investigate.  Accordingly, Petitioner has failed to demonstrate the cause and prejudice necessary to overcome his procedural default of the claim in Ground Four (c).  Likewise Petitioner has not shown that a miscarriage of justice will occur if the Court does not consider this claim.  Accordingly, this claim in the instant § 2254 petition has been defaulted and provides no basis for federal habeas relief.

4.    **Petitioner's Claims in Ground One (e), Ground Two, Ground Three, and Ground Four (b) Are Arguably Procedurally Defaulted.**

Respondents argue the following grounds are procedurally defaulted because the "precise" allegations are new:

(1)    Counsel provided constitutionally ineffective assistance because he failed to file a general demurrer against the indictment based on the lack of a signature from the grand jury foreperson.

(2)     Petitioner's plea was not knowing and voluntary because counsel did not accurately explain the differences between the rape charge and the lesser included offense of aggravated assault with intent to rape to which Petitioner entered his plea, causing Petitioner to think he was pleading to a misdemeanor rather than a felony offense.

(3)     Petitioner's due process rights were violated because he was tried on a defective indictment that was not signed by the grand jury foreperson.

(4)     Counsel provided constitutionally ineffective assistance because he coerced Petitioner into pleading guilty by erroneously telling him he was pleading guilty to a misdemeanor sexual battery charge rather than a felony aggravated assault charge.

(Doc. no. 8-1, pp. 6-10.)

As the Eleventh Circuit has explained, "[T]o exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for relief." Zeigler v. Crosby, 345 F.3d 1300, 1307 (11th Cir. 2003) (citing Henry v. Dep't of Corr., 197 F.3d 1361, 1366 (11th Cir. 1999)).  Although the exact presentation of claims may vary some between state and federal forums, "[t]he difference between the two presentations may, however, become significant where legal theories underlying the state and federal claims . . . arise under different federal constitutional provisions (including different clauses in the same constitutional amendment, *e.g.*, the due process and equal protection clauses of the 14th Amendment) . . . ." Henry, 197 F.3d at 1367.  Respondents fail to explain how variations in "precise" presentation represent significant differences in legal theories underlying the state and federal claims.

Undoubtedly, Petitioner's *pro se* claims presented at the state and federal levels are not the model of clarity, but as characterized in the final state habeas court order, Petitioner challenged the knowing and voluntary nature of his <u>Alford</u> plea based on, *inter alia*, the fact that his rights under <u>Boykin v. Alabama</u>, *supra*, had not been explained, nor had the charges been explained to him. (Doc. no. 9-3, p. 2.) The state habeas court also determined Petitioner had claimed ineffective assistance based on an alleged failure to explain the case, providing improper sentencing information, and letting Petitioner plead guilty to a void plea. (<u>Id.</u> at 4.) Lastly, the state habeas court determined Petitioner had alleged a violation of his due process rights based on a defective indictment. (<u>Id.</u> at 6.)

In his federal petition and supporting memorandum, Petitioner again alleges due process problems with his indictment and ineffective assistance based on counsel's failure to challenge it, as well as bad advice from counsel about sentencing consequences causing him to enter an involuntary and unknowing plea. Although Petitioner may not have used the exact same terminology, based on an examination of the state habeas proceedings, and in consideration of Petitioner's *pro se* status, the Court will examine the merits of these arguably defaulted claims. In the end, none of the claims form the basis for federal habeas corpus relief.

### C. Applying AEDPA Deference to the Claims that Were Previously Rejected by the State Court, Federal Habeas Relief Is Not Warranted With Respect to Any of Petitioner's Remaining Claims.

#### 1. Petitioner Entered a Knowing and Voluntary Guilty Plea.

In Ground Two of the federal petition, Petitioner argues his plea was not knowingly and voluntarily entered because the differences between the rape charge in the indictment

and the lesser included offense of aggravated assault with intent to rape, including the sentencing implications, were not properly explained to him. According to Petitioner, he thought he was pleading to a misdemeanor sexual battery charge rather than a felony aggravated assault charge. Applying Boykin v. Alabama, 395 U.S. 238, 243 (1969) and Parke v. Raley, 506 U.S. 20, 28 (1992), the state habeas court determined Petitioner had entered a knowing and voluntary guilty plea.

A plea of guilty constitutes a waiver of several basic constitutional rights, including the right to a trial by jury, the privilege against self-incrimination, and the right to confront one's accusers. See Boykin v. Alabama, 395 U.S. 238, 243 & n.5 (1969). In Boykin, the Supreme Court held that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary. See id. at 242-43. A guilty plea "is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991). The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe, 834 F.3d at 1336.

As found by the state habeas court, counsel explained to Petitioner his rights under Boykin, including his right to an attorney, a jury trial, the right to testify or remain silent, and the right to confront adverse witnesses. (Doc. no. 9-5, p. 12.) Counsel also explained to Petitioner all the information on the acknowledgment and waiver of rights form, and Petitioner initialed that he understood and was waiving those rights. (Id. at 17, 32-36.) Counsel also testified at the habeas proceedings he explained the "difference between rape and sexual battery," as well as the minimum and maximum sentences faced by Petitioner. (Id. at 11-12, 15.) Moreover, Judge Jolly confirmed no one had threatened, forced, or intimidated Petitioner into pleading guilty, and Petitioner was entering the plea because of his own choice. (Id. at 63.) As found by the state habeas court, (doc. no. 9-3, p. 2), the judge also confirmed counsel had reviewed the waiver of rights form with Petitioner and again reviewed his rights with him, including that Petitioner was pleading guilty to aggravated assault, which carried a maximum sentence of twenty-years. (Doc. no. 9-5, pp. 63-64.) Judge Jolly also reviewed the factual basis for Petitioner's plea. (Doc. no. 9-3, p. 2; doc. no. 9-5, pp. 65-66.)

Petitioner makes much of the fact that the term "sexual battery" was used throughout the state habeas proceedings, suggesting he thought he was pleading to a sexual battery misdemeanor, rather than a felony with the possibility of a twenty-year sentence. Despite the use of "sexual battery" throughout the state habeas proceedings, the contemporaneous Alford plea proceedings confirm Petitioner knew he was pleading to aggravated assault with intent to rape and faced a potential twenty-year sentence. All of the paperwork Petitioner initialed after counsel reviewed it with him states he is pleading to aggravated assault and facing a

twenty-year sentence. (Doc. no. 9-5, pp. 31-33.) Judge Jolly and the prosecutor referenced aggravated assault and the potential twenty-year sentence throughout the plea proceedings, with Petitioner affirmatively stating, "[t]hat's a lot of years." (Id. at 61, 64, 67-69.) Counsel stated at the proceedings before Judge Jolly, "My client also understands that he's going to spend a serious amount of time in prison." (Id. at 67.) When Petitioner filed a motion to modify his sentence, he acknowledged he pled to aggravated assault and asked for "20 years to serve 3," (Id. at 48-51), never suggesting a change in his sentence to a misdemeanor, as he now claims was his understanding *after* reviewing the state habeas transcript.

In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court stated:

> the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Id. at 73-74. Petitioner's belated allegations, absent any corroboration, that he was misled into believing he was entering a plea to a misdemeanor sexual battery charge rather than aggravated assault with intent to rape, a felony, do not establish he entered an unknowing or involuntary guilty plea.

Petitioner fails to explain how the state court's conclusion was an unreasonable application of Boykin or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Nor has Petitioner presented any clear and convincing evidence to rebut the presumptive correctness of the state habeas court's factual determinations. Accordingly, the Court concludes Petitioner's Alford plea

was knowing and voluntary, and Petitioner is not entitled to federal habeas relief in connection with his claim in Ground Two.

## 2. The Indictment Is Not Defective in Form or Content.

As noted above, Petitioner's *pro se* presentation of his claim in Ground Three related to the indictment is not the model of clarity. At various times he has alleged a due process violation because: (1) he was tried "on a defective indictment," (doc. no. 9-2); (2) his indictment was not signed by the grand jury foreperson, (doc. no. 1, p. 8); and, (3) the indictment was not "returned in open court," (doc. no. 4, p. 4). Applying the standards set forth in United States v. Broce, 488 U.S. 563 (1989), the state habeas court determined that Petitioner waived this claim by entering a guilty plea. (Doc. no. 9-3, p. 6.)

Because Petitioner is attempting to challenge a conviction entered pursuant to a guilty plea, the range of claims he may present in a federal petition is quite limited:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

Broce, 488 U.S. at 569.

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty

plea waives all nonjurisdictional defects in the proceedings."). As found by the state habeas court and discussed above, Petitioner entered a knowing and voluntary plea, and consequently, the state habeas court properly found that Petitioner waived any iteration of Ground Three. See Broce, 488 U.S. at 569; Tollett, 411 U.S. at 267.

Petitioner fails to explain how the state court's conclusion was an unreasonable application of Broce or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Petitioner also offers no additional evidence, let alone "clear and convincing evidence," to contradict any of the state habeas court's factual determinations. 28 U.S.C. § 2254(e)(1). Indeed, a review of the record, including the plea agreement and the change of plea hearing, demonstrates that Petitioner understood the charges against him, understood the consequences of a guilty plea, and voluntarily chose to enter his Alford plea, without being coerced to do so, (see generally doc. no. 9-5, pp. 31-36 (Acknowledgment and Waiver of Rights), 59-71 (Plea and Sentencing Tr.).) Accordingly, Petitioner is not entitled to federal habeas relief in connection with any variation of an allegation about a defective indictment raised by Ground Three.

In any event, the record contains a copy of the indictment bearing the signature of the grand jury foreperson.[2] (Doc. no. 9-5, pp. 26-27.) Petitioner offers nothing to support his

---

[2]Petitioner claims Edmund G. Byne, Jr., was the grand jury foreperson, and therefore the indictment is "defective" because it was signed by Johnny B. Bess, Jr. (Doc. no. 4, p. 5.) Petitioner offers no basis for knowledge that Mr. Bess was not actually the grand jury foreperson, as the word "FOREPERSON" appears directly above Mr. Bess's name on the list of grand jurors, and Mr. Bess placed his name on the line on the indictment specifically designated for the foreperson.

cryptic assertion the indictment was not returned in open court.[3]  When counsel was examined about the indictment at the state habeas hearing, it was read into the record and confirmed it stated the essential elements of a rape charge brought pursuant to O.C.G.A. § 16-6-1:  Petitioner had carnal knowledge of the victim on a date certain, forcibly, and against her will.  Compare Ponder v. State, 774 S.E.2d 152, 157 (Ga. Ct. App. 2015) (setting out essential elements of rape under O.C.G.A. § 16-6-1) with doc. no. 9-5, p. 27 (indictment).

Moreover, aggravated assault with intent to rape is a lesser included offense of rape. Jackson v. State, 572 S.E.2d 360, 361 (Ga. Ct. App. 2002).  "On an indictment for rape the defendant can be convicted of the offense of an assault with intent to rape, although the indictment does not contain an allegation of an assault."  Id.  Thus, if the Court were to assume Petitioner's argument of a defective indictment included the assertion aggravated assault with intent to rape was not listed in the indictment, his claim fails.  In any event, in addition to waiving this claim with the entry of his valid plea, at the proceedings before Judge Jolly, Petitioner specifically waived any indictment issues related to amending the rape charge to allow the plea to aggravated assault with intent to rape.  (Doc. no. 9-5, p. 68.) Ground Three provides no basis for relief.

### 3.     Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims.

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show

---

[3]The case cited in support of this proposition describes a situation in which court was not in session when the indictment was returned by the grand jury foreman to the Clerk of Court. Sampson v. State, 53 S.E. 332 (Ga. 1906).  Petitioner does not explain, let alone support, his blanket assertion that court was not in session when his indictment was returned.

that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690 and Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995) (en banc)). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301

(11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano, 921 F.2d at 1150-51. Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and*

that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial. <u>Hill</u>, 474 U.S. at 56-59.

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002); <u>see also</u> <u>Cave v. Sec'y for Dep't of Corr.</u>, 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly." <u>Bell</u>, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." <u>Barwick v. Sec'y, Fla. Dep't of Corr.</u>, 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." <u>Richter</u>, 562 U.S. at 105 (quotation marks and citations omitted); <u>see also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151

(2016) (internal quotations and citations omitted).  To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial."  Richter, 562 U.S. at 105; see also Woods, 135 S. Ct. at 1376 ("AEDPA's standard is intentionally difficult to meet.").

####    4.    The State Court's Application of Strickland to Petitioner's Remaining Ineffective Assistance Claims in Grounds One and Four Was Not Objectively Unreasonable.

Petitioner asserts numerous allegations of ineffective assistance of counsel in Grounds One and Four of his § 2254 petition.  Specifically, Petitioner claims in Ground One counsel provided constitutionally ineffective assistance of counsel because he:

    (a) did not explain the case to Petitioner;
    (b) coerced Petitioner into pleading guilty by telling him he would be sentenced to life in prison if he went to trial;
    (c) failed to investigate Petitioner's case;
    (d) let petitioner plead guilty to a "void guilty plea"; and
    (e) failed to file a general demurrer against the indictment because it was not signed by the grand jury foreperson.

Petitioner claims in Ground Four counsel provided constitutionally ineffective assistance because he did not file a general demurrer against the indictment alleging a missing signature by the grand jury foreperson and because he coerced Petitioner into pleading guilty by not accurately explaining the charge and penalty to which he was pleading.

The state habeas court found that Petitioner's ineffective assistance claims lacked merit under Strickland, (doc. no. 9-3, pp. 4-7), and the Georgia Supreme Court denied the request for a CPC, an adjudication on the merits that warrants the deferential standard of

review prescribed by § 2254(d).  See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235, 1239 (11th Cir. 2016), *petition for cert. filed*, No. 16-6855 (U.S. Nov. 10, 2016). Although the summary denial of the CPC by the Georgia Supreme Court is the final state court adjudication on the merits, id. at 1235, this Court may look to the previous opinion of the state habeas court "as one example of a reasonable application of law or determination of fact.  Id. at 1239.  In this way, the Court can use the previous opinion "as evidence that the relevant state court decision under review is reasonable."  Id.  As discussed below, the state habeas court correctly identified the two-part Strickland analysis, and correctly decided Petitioner did not meet either the deficient performance or the prejudice prong.  (Doc. no. 9-3, pp. 5, 7.)

### a.  Testimony at State Habeas Evidentiary Hearing

Attorney Joshua B. Smith represented Petitioner in his underlying criminal proceedings.  Counsel testified he graduated law school and passed the Bar in 2000.  (Doc. no. 9-5, p. 9.)  He worked in Augusta, Georgia, as a prosecutor in the Solicitor's Office for five years, worked at the Public Defender's Office for eight years, and then was hired as an Assistant District Attorney.  (Id. at 9-10.)  When representing Petitioner as a Public Defender, he met with Petitioner several times and spoke with several of his family members during his investigation of the case.  (Id.)  These family members told counsel the victim was having consensual sex with Petitioner to obtain pills and was a "spitfire" who would have fought back if Petitioner had acted inappropriately.  (Id.)  Thus, counsel began preparing to go trial.

However, when the victim came to court for a pre-trial hearing, she was a well-spoken, very sympathetic, approximately four-foot tall young lady weighing ninety pounds who had a hunch-back, toothpicks for arms and legs, and walked with a limp. (Id. at 11, 13.) Counsel was forced to re-evaluate the information he had been given by family members, surmised they had told him bad things about the victim because Petitioner was the only person who had any income for them, and went to the jail to discuss with Petitioner his opinion that it would be a very bad idea to go to trial. (Id. at 11, 13.) Counsel explained, consistent with the penalty provisions of O.C.G.A. § 16-6-1, Petitioner could get a life sentence if convicted of rape, and he explained it was in Petitioner's best interest to take a plea deal. (Id. at 12, 14.) Counsel secured a reduced charge and plea offer for a twenty-year "split sentence" with ten years in prison and ten years on probation. (Id.) Throughout the habeas proceedings and final order, the reduced charge is referred to as "sexual battery" rather than aggravated assault with intent to rape, although all contemporaneous paperwork and plea proceedings correctly identified the reduced charge as aggravated assault and properly identified the potential prison sentence of twenty years. A sexual battery charge is a misdemeanor carrying a potential sentence of up to one year of confinement. O.C.G.A. § 16-6-22.1; see also O.C.G.A. § 17-10-3.

Counsel had been told by family members Petitioner did not read or write well, so counsel made sure to review with him "each and every part" of the acknowledgment and waiver of rights form, including his rights to a lawyer, have a jury trial, testify or remain silent, and confront adverse witnesses. (Id. at 11-12.) Counsel testified he spent approximately two hours going over Petitioner's rights. (Id. at 17.) Petitioner gave counsel

no reason to question his mental competency and knew Petitioner understood his rights as had been explained to him in detail by counsel. (Id. at 13.) Counsel testified Petitioner affirmatively accepted the plea agreement and was not in any way coerced into pleading guilty. (Id. at 15-16.) Counsel also reviewed the indictment at the habeas hearing, and based on thirteen years of criminal law experience, could find nothing wrong with it, and saw no valid basis for filing a demurrer to it. (Id. at 18-19.)

Petitioner questioned counsel at the state habeas hearing about how long they had met prior to the plea proceedings, but counsel maintained his original position that he spent "a great deal of time" going over Petitioner's rights. (Id.) Petitioner did not further challenge counsel's assessment of the indictment or otherwise challenge counsel's testimony concerning that information conveyed to Petitioner about the risks and penalties associated with going to trial or accepting a plea deal. Petitioner did, however, testify that despite having signed the acknowledgment and waiver of rights form and telling Judge Jolly under oath that he understood all of his rights and wanted to waive them and enter his Alford plea to aggravated assault, a charge carrying a possible twenty-year sentence, he did not understand what he was doing. (Id. at 6.) Petitioner alternately testified "they" told him he was facing life without parole if he went to trial, (id. at 6), and counsel old him "you gone get life in prison or you gone sign here," (id. at 7.) Petitioner further testified none of his witnesses had been interviewed and he did not feel as though counsel was "working with" him. (Id. at 7-8.)

## b.      Case Preparation

Petitioner claims counsel did not explain the case to him, failed to investigate the case, and coerced Petitioner into pleading guilty by telling him he would be sentenced to life in prison if he went to trial.  The state habeas court found, as does this Court, there was no deficient performance under Strickland, let alone prejudice to Petitioner, in counsel's case preparation.

As set forth above, counsel interviewed Petitioner's family members and started preparations for trial based on their information about the victim, which upon seeing her, counsel realized he had been misinformed, likely motivated by a desire to have Petitioner's income-generating presence available.  Realizing the victim's appearance and testimony at trial would eviscerate the story that had been set forth by Petitioner's defense witnesses, counsel explained the situation to Petitioner, accurately conveying that conviction of rape could result in life in prison, and recommending a negotiated plea.[4]  Moreover, despite the use of the term "sexual battery" in the state habeas proceedings, as explained in detail above, nothing in the record suggests anything other than aggravated assault with intent to rape was discussed contemporaneously with the plea decision-making process.  In any event, even if the Court were to presume, which it does not, counsel misrepresented facts about the case

---

[4]Petitioner's attempt to draw a distinction between life in prison without the possibility of parole and life in prison with the possibility of parole is a red herring.  Not only did Petitioner's testimony on the point vacillate at the state habeas hearing, (doc. no. 9-5, pp. 6, 7), but the penalty for rape under O.C.G.A. § 16-6-1(b) ranges from no less than twenty-five years to life in prison.  Whether Petitioner would have been granted parole and successfully adhered to its conditions could not have been known by counsel at the time Petitioner was deciding whether to enter his plea.  Counsel accurately explained Petitioner could face a sentence of life in prison if convicted of rape at a trial, but the negotiated plea would provide sentencing certainty of ten years in prison and ten years of probation.  (Doc. no. 9-5, pp. 33, 38.)

and sentencing and thereby "coerced" Petitioner into pleading guilty, he could not demonstrate prejudice because he had ample opportunity at the hearing before Judge Jolly to correct any misunderstandings he claims to have had.  See Cruz v. United States, 188 F. App'x 908, 914 (11th Cir. 2006).

In sum, Petitioner fails to explain how the state court's decision on these ineffective assistance claims was an unreasonable application of Strickland or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Petitioner also offers no additional evidence, let alone "clear and convincing evidence," to contradict any of the state habeas court's factual determinations.  28 U.S.C. § 2254(e)(1). Counsel's performance was neither deficient nor prejudicial with respect to his investigation and preparation of Petitioner's case, and Parts (a), (b), and (c) of Ground One, along with Ground Four (b), form no basis for relief.

### c.  Decision Not to Challenge Indictment

Petitioner's remaining allegations of ineffective assistance relate to the form and content of the indictment, and the assertion that because the indictment was invalid, counsel was ineffective for letting Petitioner plead to a "void guilty plea."  The state habeas court found, as does this Court, there was no deficient performance under Strickland, let alone prejudice to Petitioner, in counsel not challenging the indictment.

The indictment charged Petitioner:

with the offense of **RAPE (§ 16-6-1)** for that the said accused, in the County of Burke and State of Georgia, on the 22nd day of July, 2012, did have carnal knowledge of Mary K. McCoy, a female, forcibly and against her will, contrary to the law of said State, the good order, peace and dignity thereof.

(Doc. no. 9-5, p. 27.)  The line reserved for the grand jury foreperson is signed by Johnny B. Bess, Jr., the person whose name appears directly under the designation of foreperson on the list of grand jurors.  (Id. at 26, 27.)

As discussed in detail in Part III.C.2, *supra*, discussing Petitioner's stand-alone challenge(s) to the indictment, there was no defect with the indictment in form or substance. Moreover, aggravated assault with intent to rape is a lesser included offense of rape, Jackson, 572 S.E.2d at 361, and Petitioner waived any amendments and/or problems with respect to the indictment, on the record, at the plea proceedings, (doc. no. 9-5, p. 68).  Petitioner alternately argues counsel should have filed a special or general demurrer.  "A demurrer to an indictment may be general or special.  A general demurrer challenges the very validity of the indictment [while] the special objects merely to its form or seeks more information. . . ." Kimbrough v. State, 785 S.E.2d 54, 56 (Ga. Ct. App. 2016) (citation omitted).  Neither type of demurrer would have been warranted in this case because there was no error with the indictment to raise.

In sum, Petitioner fails to explain how the state court's decision on these ineffective assistance claims was an unreasonable application of Strickland or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Petitioner also offers no additional evidence, let alone "clear and convincing evidence," to contradict any of the state habeas court's factual determinations.  28 U.S.C. § 2254(e)(1). Counsel's performance was neither deficient nor prejudicial with respect to not challenging the indictment, and Parts (d) and (e) of Ground One, along with Ground Four (a), form no basis for relief.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the petition be **DENIED** without an evidentiary hearing, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondents.

SO REPORTED and RECOMMENDED this 21st day of December, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA